Marsha Francine MODDERNO, Plaintiff,

v.

James B. KING, Director, U.S. Office of Personnel Management Agency, Defendant.

Civ. No. 93–1679 (CRR).

United States District Court, District of Columbia.

Dec. 19, 1994.

Joseph Marc Sellers, Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, DC, for plaintiff.

Thomas S. Rees and Cynthia Ann Schnedar, U.S. Attorney's Office, Washington, DC, for defendant.

## ORDER

CHARLES R. RICHEY, District Judge.

On December 15, 1994, the Court held a hearing on the Defendant's Motion to Dismiss, filed November 4, 1994. The Court is also in receipt of the Plaintiff's Opposition thereto, and the Defendant's Reply.[1] Upon careful consideration of the pleadings filed by both parties, the oral argument of counsel, the applicable law, and the entire record in this case, the Court finds that the Defendant's Motion shall be granted.

The Plaintiff alleges that she was discriminated against on the basis of her mental disability, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"),[2] because the health insurance she was offered as a participant in one of the Federal Employees Health Benefit ("FEHB") programs, administered by the United States Office of Personnel Management ("OPM"), provided less coverage for the treatment of mental illnesses than for the treatment of physical illnesses.

In his Motion to Dismiss, the Defendant argues that, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff fails to state a claim upon which relief can be granted because "a federal agency is allowed to make distinctions in the levels of benefits it offers for physical and mental illnesses in its health plans. . . ." Motion to Dismiss, at 1. The Plaintiff states, in opposition, that the allegations in her Complaint are "clearly sufficient" to state a claim under Section 504. Opposition, at 2. In particular, she contends that the undisputed disparity between the insurance coverage for mental illness versus physical illness under the Plaintiff's FEHB plan creates an inference of discrimination warranting discovery into the criteria used by OPM to formulate the plan at issue. For the reasons discussed herein, however, the Court must agree with the Defendant.

## BACKGROUND

In 1959, Congress enacted the Federal Employees Health Benefits Act ("FEHBA") to provide medical coverage for United States Government employees, retirees, and eligible members of their families. 5 U.S.C. § 8901 *et seq.* Pursuant to the authority granted by the FEHBA, the OPM contracts with various carriers who offer FEHB plans to beneficiaries. The Plaintiff claims that the Foreign Service Benefit Plan ("FSBP"), a plan offered under the FEHB and of which the Plaintiff was a member during 1990 and

---

**1.** The Defendant also filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, on October 12, 1994. Per the parties' Joint Motion to Extend Time, dated October 24, 1994, and in the Defendant's instant Motion to Dismiss, the Court is advised that the Defendant is withdrawing its earlier motion "because the parties have subsequently narrowed the issues to be addressed in this dispositive motion." Motion to Dismiss, at 1 n. 1. Accordingly, the Court shall declare moot the Defendant's motion dated October 12, 1994.

**2.** In her Complaint, filed *pro se*, the Plaintiff also raises a claim under the Americans With Disabil-

ities Act ("ADA"), 42 U.S.C. § 12112(a). The Defendant asserts that the ADA does not apply here because the Plaintiff was neither a federal employee nor an applicant for federal employment, and because the ADA specifically defines "employer" to exclude the United States, 42 U.S.C. § 12111(5). In her Opposition to the instant motion, filed through counsel, the Plaintiff does not respond to the Defendant's argument regarding the ADA claim. While the Court agrees that the ADA does not apply to the instant case on its face, the Court shall treat this argument as conceded. *See* Local Rule 108(b).

1991, discriminates against the Plaintiff and all other mentally disabled participants by "allot[ing] benefits for mental illness that are unequal to benefits for any other illness." Complaint, ¶ 9. The Plaintiff further alleges that she has a mental disability which required hospitalization from November 1989 through December 1991, and that she was prematurely released because the plan would not pay for additional hospitalization.

### DISCUSSION

Section 504 of the Rehabilitation Act prohibits a federal agency or a federally funded program from denying benefits to handicapped individuals solely on the basis of their disability.[3] To establish a prima facie case under § 504, a person must be handicapped under the Act, otherwise qualified to receive or participate in the federally supported benefit or program, and excluded from the benefit solely by reason of her or his handicap. *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437, 441 (6th Cir. 1991). At oral argument, counsel for the Defendant conceded for purposes of this motion that the Plaintiff is handicapped and that she is otherwise qualified to participate in the FEHB plan. The Defendant asserts, however, that because all benefits under the plan at issue are available to both mentally and physically handicapped persons, the Plaintiff cannot show that she was excluded from a benefit solely by reason of her handicap. Moreover, the Defendant argues that OPM has broad discretionary authority under the FEHBA to make distinctions in the levels of benefits it offers for various illnesses. 5 U.S.C. §§ 8901–8913.

The Court must agree. The Supreme Court has provided considerable guidance on this issue—in the face of virtually no authority supporting the Plaintiff's position. In *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the Court held that the Veterans' Administration could deny extensions of educational assistance benefits to those veterans whose disabilities were attributable to their own "willful misconduct." The Court found that, consistent with the Rehabilitation Act, such individuals were not denied benefits solely by reason of their handicap. *Id.* at 549, 108 S.Ct. at 1382. Although the facts of *Traynor* are distinguishable from those of the instant case, as in *Traynor*, "[t]his litigation does not involve a program or activity that is alleged to treat handicapped persons less favorably than non-handicapped persons." *Id.* at 548, 108 S.Ct. at 1381. The Supreme Court explained that "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Id.* at 549, 108 S.Ct. at 1382. Such result, however, is precisely what the Plaintiff seeks here.

Even prior to *Traynor*, in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), the Supreme Court found that Tennessee did not violate Section 504 by reducing the number of inpatient hospital days covered by Medicaid, notwithstanding the alleged need for greater inpatient care for handicapped individuals. The Court reasoned that the Rehabilitation Act "does not ... guarantee the handicapped equal results from the provision of state Medicaid, even assuming some measure of equality of health could be constructed." *Id.* at 304, 105 S.Ct. at 722.

Moreover, the Court attempted at oral argument to direct the parties' focus to a fundamental point, raised by *Alexander* and, in the Court's view, particularly salient here: any interpretation of § 504 must consider, in addition to the statutory objectives, "the desire to keep § 504 within manageable bounds." *Id.* at 298, 105 S.Ct. at 719. Accordingly, the Supreme Court "reject[ed] the boundless notion that all disparate-impact showings constitute prima facie cases under § 504...." *Id.* Despite the Court's ardent

---

**3.** Section 504 states:
No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.
29 U.S.C. § 794(a) (Supp.1994).

desire to delve further into the potential injustice perceived by the Plaintiff, the Court cannot ignore *Traynor* and *Alexander* and find that the mere disparity in benefits received by different classes of handicapped persons under the FEHB plan at issue creates a cognizable claim under Section 504. To do so would be to accept the "boundless notion" already rejected by the high Court, and to invite challenges to virtually every exercise of OPM's discretion with respect to the allocation of benefits amongst an encyclopedia of illnesses. Upon careful review of the briefs and the relevant law, and after pointed inquiry at oral argument, the Court simply cannot find a feature of the Plaintiff's claim which would warrant an alternative conclusion.[4] As the Court is sympathetic to the Plaintiff in view of the obstacles confronting those with mental illnesses in our modern society, however, it is with reluctance that the Court reaches its inevitable conclusion.

Accordingly, upon careful consideration of the entire record in this case and the applicable law, it is, by the Court, this 19 day of December, 1994,

ORDERED that the Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment [19–1], dated October 12, 1994, shall be, and hereby is, declared MOOT; and it is

FURTHER ORDERED that the Defendant's Motion to Dismiss [23–1], dated November 4, 1994, shall be, and hereby is, GRANTED.

---

**4.** *See also Doe v. Colautti*, 592 F.2d 704 (3d Cir.1979) (state may limit its covered-private-inpatient-psychiatric care to 60 days even though the state sets no limit on the duration of coverage for physical illnesses); *Doe v. Devine*, 545 F.Supp. 576, 585 (D.D.C.1982), *aff'd on other ground*, 703 F.2d 1319 (D.C.Cir.1983) ("The ... interpretation urged by the plaintiffs, that provi-

sion of a benefit to ameliorate one harm triggers the requirement to furnish equal benefits to all handicapped persons, is neither sensible nor supported by the legislative history of section 504."). *Cf. Doe v. Devine*, 703 F.2d 1319, 1327 (D.C.Cir. 1983) (Under FEBHA, "Congress did not intend to require equal levels of catastrophic coverage for mental and physical illnesses.").