919 F.Supp. 832 (1996)
Mojtaba ESFAHANI, Ph.D.
v.
The MEDICAL COLLEGE OF PENNSYLVANIA, Hahnemann University, Inc., Hahnemann University Hospital and Allegheny Health, Education and Research Systems.
Civil A. No. 95-6430.
United States District Court, E.D. Pennsylvania.
March 18, 1996.
*833 *834 Nancy C. DeMis, Richard, DiSanti, Gallagher, Schoenfeld & Surkin, Media, PA, for Plaintiffs.
Mark Blondman and Marjorie Shreiber Roshkoff, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Defendants.

MEMORANDUM
JOYNER, District Judge.
All Defendants, the Medical College of Pennsylvania, Hahnemann University, Inc., Hahnemann University Hospital and Allegheny Health, Education and Research Systems, move this Court to dismiss the first five Counts of Plaintiff, Mojtaba Esfahani's, six Count Complaint.
According to the Complaint, Plaintiff has been employed by Defendants as a Professor of Biochemistry since 1978. In November, 1993, Defendants distributed to Plaintiff a booklet entitled Personal Enrollment Profile 1994, which purports to describe Plaintiff's employment benefits and fringe benefits. This booklet is the Summary Plan Description as defined by the Employee Retirement Income Security Program (ERISA), 29 U.S.C. §§ 1001-1461 (1985 & Supp.1995). The Summary Plan Description refers to a Benefits Handbook, which Plaintiff repeatedly requested but never received. The Complaint alleges that no such Handbook actually exists.
According to the Summary Plan Description, Plaintiff was entitled to a Long-Term Disability (LTD) Plan, which Plaintiff elected in the 70% option and for which he paid extra money. Plaintiff's LTD Plan is described as providing benefits after 26 weeks of disability "up to at least age 65" and states that Defendants will continue their contributions to Plaintiff's retirement plan for as long as Plaintiff receives LTD benefits.
Plaintiff suffers from bi-polar affective disorder (formerly known as manic depression) for which he has been under medical care for more than five years. Defendants have been aware of this disability since at least 1981. This disorder is of biochemical etiology or cause. In December, 1993, Plaintiff's condition worsened to the point where he became completely disabled from performing his *835 duties and functions as Professor of Biochemistry.
Under the LTD Plan, therefore, Plaintiff became eligible for benefits in May, 1994. In June, 1994, however, Plaintiff was notified that because his disability was a mental/nervous condition, his LTD benefits were only payable for 24 months, not until retirement. Plaintiff alleges that Defendants knew the Summary Plan Description was incomplete, misleading and incorrect in this respect, but that he did not, and should not, have known this. Furthermore, Plaintiff alleges that he relied on Defendants' representations to him regarding LTD benefits.
Plaintiff's claims are brought under ERISA, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1995) and the Pennsylvania Human Relations Act (PHRA), 43 Pa.Cons.Stat.Ann. §§ 951-63 (1991 & Supp.1994). Defendants seek to dismiss all but Count Six, which alleges that Defendants violated their fiduciary duties under ERISA by failing to give Plaintiff an adequate Summary Plan Description.
In considering this Rule 12(b)(6) motion, we must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir.1990).
We must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir.1991); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988).

DISCUSSION

1. Qualified Individual With a Disability
Count One purports to state a cause of action under the ADA. It alleges that Defendants violated that law by maintaining an employee benefit plan that distinguishes between classifications of illness. Defendants contend that this Count must be dismissed because Plaintiff admits that he is totally disabled from performing his duties as a Professor of Biochemistry. This means, Defendants maintain, that Plaintiff is not qualified for his employment position and therefore has no standing to sue under the ADA.
In support, it points first to the language of the ADA. That law defines a "qualified individual with a disability" as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8). Because no amount of accommodation could permit Plaintiff to perform the essential functions of his employment position, Defendants insist that he is not a qualified individual and therefore, not covered by the ADA.
As additional support, Defendants cite to a case with almost identical facts, which held that a totally disabled employee could not bring an ADA claim because, being totally disabled from working, she was not a qualified individual. Parker v. Metropolitan Life Insurance Co., 875 F.Supp. 1321, 1326 (W.D.Tenn.1995). That Court agreed that it may be undesirable not to protect totally disabled persons under the ADA, but that nonetheless, they are not protected. Id. (citing Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768 (8th Cir.1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988)).
In opposition, Plaintiff first contends that he was covered by this discriminatory benefits plan while he was a qualified individual with a disability and that therefore, he has standing. Hishon v. King & Spalding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (pre-ADA case). Second, he distinguishes Parker on the ground that the ADA was not yet effective at the time that plaintiff became totally disabled.
This is a motion under Rule 12(b)(6) and we will only dismiss if it appears that there is no set of facts under which *836 Plaintiff can find relief. Plaintiff has alleged that while he was a qualified employee with a disability, i.e., before he became totally disabled, the ERISA plan covering him effectuated disability-based discrimination. For this reason, we will not dismiss this claim. However, to the extent that his claim is for the period after he became totally disabled, we find that there is no cause of action under the ADA, which specifically limits its protection to those who can, with or without reasonable accommodation, perform their employment duties. Once Esfahani became totally disabled, he ceased to be a qualified individual with a disability and ceased to have standing under that law.

2. Diagnosis-Based Differentiation
Defendants move to dismiss both Counts One and Two, under the ADA and PHRA respectively, on the basis that neither statute prohibits diagnosis-based differentiation in the administration of benefit plans. For example, the ADA's regulations state that "a covered entity may establish, sponsor, observe or administer the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with state law." 29 C.F.R. § 1630.16. Likewise, the PHRA provides that it does not apply to the "operation of the terms or conditions of any bona fide group or employe insurance plan." 43 Pa.Cons.Stat. Ann. § 955. Because of these provisions, Defendants maintain that there is no claim against them because the differentiation between physical and mental disabilities is diagnosis-based and therefore permissible. Modderno v. King, 871 F.Supp. 40 (D.D.C. 1994).
Plaintiff does not apparently contest Defendants' interpretation of the law. He does, however, contest whether Defendants' plan falls within the protection of the law. He points to allegations in the Complaint that the differentiations the LTD Plan makes are arbitrary, discriminatory and without scientific basis. Complaint ¶¶ 29-31; Henderson v. Bodine Aluminum, 70 F.3d 958 (8th Cir. 1995).
This is a motion to dismiss and as such, we take as true the allegations in the Complaint and draw inferences in Plaintiff's favor. Given that, we find that Plaintiff has adequately alleged that the diagnosis-based differentiations in the LTD Plan are not based on legitimate grounds such that they are protected by the sections of the statutes quoted above. For that reason, this portion of Defendants' Motion must be denied.

3. Exhaustion of Administrative Remedies
Count Three brings a claim under ERISA, 29 U.S.C. § 1025(a) and § 1104, for failing to make payments under the LTD until Plaintiff's retirement age. Defendants declare that this Count must be dismissed because Plaintiff fails to allege that he exhausted the administrative procedures available to him. Defendants do not define what those administrative procedures were, but argue that the only excuse for failure to comply is an allegation that exhaustion would be futile. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir.1990), cert. denied, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); Weldon v. Kraft, Inc., 896 F.2d 793 (3d Cir.1990); Kimble v. International Brotherhood of Teamsters, 826 F.Supp. 945, 947 (E.D.Pa.1993).
Plaintiff objects, first, on the ground that there is no basis, at least on the face of the Complaint, for this Court to determine that there were any administrative procedures for him to exhaust. Second, Plaintiff asserts that there are in fact three exceptions to the exhaustion doctrine; futility, but also denial of meaningful access to administrative remedies and irreparable harm. Kimble, 826 F.Supp. at 947 n. 1.
Plaintiff's Complaint alleged that he repeatedly requested the Benefits Handbook, which presumably would have indicated what administrative procedures existed, but was never provided with a copy, and in fact, was told that no such Handbook existed. Plaintiff demonstrates that neither the Summary Plan Description or the letter informing him of his shortened LTD benefits period, both attached to the Complaint, indicate any administrative procedure. Therefore, he contends, if there was a process, he was denied meaningful access to it.
*837 We agree with Plaintiff. Our reading of the Complaint and its attachments do not indicate the existence of any administrative path to relief. For that reason and for the purposes of this motion to dismiss, Plaintiff's claim is not barred for failure to exhaust administrative procedures. In the alternative, we find that the allegation in the Complaint that Plaintiff has "done all acts necessary to receive the [LTD] benefits" can reasonably be inferred to allege that Plaintiff has exhausted whatever remedies existed. Complaint ¶ 37. For this reason, we deny this portion of Defendants' Motion.

4. Pre-Emption by ERISA
Count II brings a claim for disability-based discrimination under the PHRA. ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). According to Defendants, the PHRA relates to this ERISA-covered plan, and is therefore pre-empted. Plaintiff argues, however, that the PHRA is not pre-empted because it is co-extensive with the ADA, and as such, is preserved by ERISA.
The Supreme Court has made a number of rulings on the issue of pre-emption under ERISA and despite the parties' disagreement over their meaning, the case-law is uniform and coherent. First, the Supreme Court has consistently held that a state law "relates to" a plan if the law directly or indirectly regulates the plan itself. New York Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., ___ U.S. ___, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). A law that, in contrast, only regulates the insurer or affects pricing does not relate to a plan. Id. at ___, 115 S.Ct. at 1679. So, in Travelers, the Court held that a New York law did not relate to a plan when the law regulated the amount hospitals charged different insurance companies, even when those different charges resulted in some benefit plans being more expensive than others. Id. In contrast, the Court found that a different New York law did relate to a plan when the law prohibited employers from structuring their employee benefit plans in a way that discriminated on the basis of pregnancy. Shaw v. Delta Air Lines, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).
Under the above guidance, we have no problem finding that the PHRA relates to ERISA in that it prohibits employers from structuring their employee benefit plans in a way that discriminates on the basis of disability. This does not end the analysis, however, because Plaintiff argues that even if the PHRA relates to the plan, the PHRA is not pre-empted because it is co-extensive with the ADA.
Shaw explained that ERISA exempts federal laws from pre-emption. 29 U.S.C. § 1144(d). Certain federal laws, such as Title VII and the ADA, specifically preserve nonconflicting state laws. 42 U.S.C. § 12201. These laws contain work-sharing and referral arrangements between the federal and state governments. The Supreme Court reasoned that if these co-extensive state laws were pre-empted by ERISA, that the federal government's ability to enforce its laws would be impaired. For that reason, the Court held that state laws that are co-extensive with federal laws are not pre-empted under ERISA. By the same token, "state laws [that] prohibit employment practices that are lawful under" federal law are properly pre-empted. Id. at 103, 103 S.Ct. at 2903. Further, a state law can have portions of it pre-empted and portions of it not preempted. Id. at 105-06, 103 S.Ct. at 2904-05.
Above, we found that Plaintiff had adequately pleaded a cause of action under the ADA. Pennsylvania is a "referring" state with a work-sharing agreement with the EEOC and the PHRA is co-extensive with the ADA in at least large part. Under the Shaw holding, then, Plaintiff's claim under the PHRA is not pre-empted by ERISA insofar as the PHRA provisions are compatible with the ADA. Id. at 104, 103 S.Ct. at 2903-04. For this reason, we find that Count II is not properly dismissed to the extent that the PHRA is co-extensive with the ADA.
Defendants also seek to dismiss Count IV, an estoppel claim under state law, on the ground that it is pre-empted by *838 ERISA. Plaintiff responds that in fact, his claim is a federal ERISA estoppel claim, not a state one. As such, he contends that his claim can stand because he has pleaded all the necessary elements of an ERISA estoppel claim. Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.), cert. denied, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); National Cos. Health Benefit Plan v. St. Joseph's Hosp., 929 F.2d 1558, 1571-72 (11th Cir.1991); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir.1990); Pane v. RCA Corp., 868 F.2d 631 (3d Cir.1989).
Defendants deny that Plaintiff has stated a claim for ERISA estoppel. They contend that in the Third Circuit, a Plaintiff must plead extraordinary circumstances in addition to the elements Plaintiff did plead. Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir.1994); Stires v. Sprint Corp., No. 95-1510, 1995 WL 632077 (D.N.J. Sept. 18, 1995).
We agree with Defendant that Plaintiff must plead extraordinary circumstances in order to state a claim for equitable estoppel. The cases cited by Plaintiff do not contradict this holding due to the fact that those cases arose either in different fact settings or were resolved on different bases. Furthermore, we find that Plaintiff has failed to plead extraordinary circumstances and for that reason, Count IV must be dismissed. If Plaintiff is able to amend his Complaint to make such an allegation, he may petition the Court for leave to amend. Otherwise, the dismissal of Count IV is with prejudice.

5. Breach of Fiduciary Duty
Count V of Plaintiff's Complaint purports to state a claim under 29 U.S.C. § 1109(a), which makes a fiduciary liable to an ERISA plan for any losses resulting from a breach of that fiduciary's duties. Defendants maintain that Plaintiff cannot state a claim under this section because only the plan may recover the losses, not an individual beneficiary. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 141-42, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985); Walter v. International Ass'n of Machinists Pension Fund, 949 F.2d 310 (10th Cir.1991).
In response, Plaintiff agrees that he cannot recover solely under section 1109(a). Instead, he contends that he should have pleaded his claim under section 1132(a)(3), which allegedly does permit recovery by individual plaintiffs. He asks leave of this Court for permission to amend his complaint in the event this Count is dismissed. We do dismiss Count V for failure to state a claim and do grant Plaintiff fifteen days leave to amend Count V.
An appropriate Order follows.

ORDER
AND NOW, this 18th day of March, 1996, upon consideration of Defendants' Motion to Dismiss Counts I, II, III, IV and V of Plaintiff's Complaint and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART. The Motion is GRANTED with respect to Counts IV and V. Plaintiff is GRANTED fifteen days from the date of this Order's entry to amend Count V. The Motion is hereby DENIED in all other respects.