Harry BELLAS, Plaintiff,

v.

CBS, INC. and Westinghouse Pension Plan, Defendants.

Civil Action No. 98–1455.

United States District Court,
W.D. Pennsylvania.

June 29, 1999.

**494**

John T. Tierney, David B. Rodes, Theodore Goldberg, Goldberg, Persky, Jennings & White, Pittsburgh, PA, for Harry Bellas.

Todd C. Amidon, Jones, Day, Reavis & Pogue, Pittsburgh, PA, Brian T. Ortelere, Pepper Hamilton, Philadelphia, PA, Andrew M. Kramer, Charles V. Stewart, Gregory G. Katsas, Jones, Day, Reavis & Pogue, Washington, DC, George M. Medved, Henry W. Ewalt, Pittsburgh, PA, for CBS, Inc.

Henry W. Ewalt, Pittsburgh, PA, for Westinghouse Pension Plan.

### OPINION and ORDER OF COURT

AMBROSE, District Judge.

Pending before the Court is the Fed. R.Civ.P. 12(b)(6) Motion to Dismiss of Defendants CBS, Inc. and Westinghouse Pension Plan ("Defendants") as to the Complaint filed against them by Plaintiff Harry Bellas ("Bellas" or "Plaintiff"). Plaintiff's Complaint alleges a violation of ERISA § 204(g), 29 U.S.C. § 1054(g) against both Defendants and a breach of fiduciary duty claim against Defendant CBS, Inc. ("CBS"). For the reasons set forth below, the Defendants' Motion to Dismiss is denied.

### STANDARD OF REVIEW

In deciding a motion to dismiss, all factual allegations and all reasonable inferences therefrom must be accepted as true and viewed in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988). A court may dismiss a plaintiff's complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss for failure to state a claim, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn*, 838 F.2d at 666.

### FACTS

Plaintiff alleges that Westinghouse Electric Corporation ("Westinghouse"), the predecessor by name change to Defendant CBS, impermissibly amended the Westinghouse Pension Plan ("the Plan") by first narrowing and then eliminating entirely a "Special Retirement Provision" applicable when a senior employee is terminated as a result of a "Permanent Job Separation." Plaintiff argues that said amendment has the effect of eliminating or reducing an early retirement benefit or an early retirement-type subsidy in contravention of the Retirement Equity Act ("REA") Amendments to ERISA, 29 U.S.C. § 1054(g).[1] Plaintiff further claims that in adopting

---

1. 29 U.S.C. § 1054(g) is entitled "Decrease of accrued benefits through amendment of plan" and provides in relevant part:

   (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .

   (2) For the purposes of paragraph (1), a plan amendment which has the effect of—

   (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in the regulations), or

   (B) eliminating an optional form of benefit,

   with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfied (either before or after the amendment) the preamendment conditions for the subsidy.

   29 U.S.C. § 1054(g).

and implementing said amendment, CBS violated its fiduciary duties of acting solely in the interest of plan participants and beneficiaries, of administering the Plan in accordance with both the governing documents and instruments and ERISA, and of exercising care, prudence, and diligence in the performance of its responsibilities.

The Plan provides a Special Retirement Pension for employees of CBS meeting stated age and service requirements who are terminated as a result of a "Permanent Job Separation." Prior to January 1, 1994 ("the pre–1994 version of the Plan"), the term "Permanent Job Separation" was defined in the Plan as meaning "the termination of the employment of an Employee ... through no fault of his own through lack of work for reasons associated with the business for whom [the employer] determines there is no reasonable expectation of recall." An amendment to the Plan, adopted by CBS on January 1, 1994 ("the Amendment"), altered participants' entitlement to a Special Retirement Pension in two respects: (1) the Amendment made it harder to qualify for a Special Retirement Pension after January 1, 1997, by narrowing the definition of "Permanent Job Separation" to apply only if an employee's employment termination was due to a job movement, product line relocation, or location close-down and (2) the Amendment eliminated the Special Retirement Pension *in toto* for terminations on or after September 1, 1998.[2]

Plaintiff was employed by CBS in the nuclear division of CBS until December 31, 1997. He was a participant in the Plan at all relevant times prior thereto, including at the time of the adoption of the Amendment. Plaintiff was not notified of the Amendment until late in 1994 or until distribution of the January 1, 1995 Summary Plan Description ("SPD").

As of January 1, 1997, the effective date of the Amendment's alteration of the meaning of "Permanent Job Separation," Plaintiff was over age 50 and had more than thirty (30) years of Eligibility Service at CBS.

As part of a coordinated layoff directed primarily at employees of senior age, Plaintiff's employment was terminated by CBS on December 31, 1997, through no fault of his own, through lack of work, for reasons associated with CBS's business and with no reasonable expectation of recall.

Upon being laid off, Plaintiff met all of the requirements for a Special Retirement Pension under the pre–1994 version of the Plan.

CBS did not inform Plaintiff of his eligibility for a Special Retirement Pension under the pre–1994 version of the Plan, thereby preventing him from making a claim under the pre–1994 version of the Plan.

Since January 1, 1997, CBS has persisted in denying Special Retirement Pensions to those who, like Plaintiff, have otherwise qualified under the pre–1994 version of the Plan.

## LEGAL ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

### A. Waiver.

In support of their Motion to Dismiss, Defendants first argue that Plaintiff's Complaint must be dismissed because by signing a contractual release, Plaintiff has waived his right to bring this action. Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defendants' Supporting Brief"), pp. 3–8. More specifically, Defendants argue that Plaintiff's Complaint must be dismissed be-

---

**2.** With respect to the total elimination of the Special Retirement Pension after September 1, 1998, Defendants explain in their Opposition to Plaintiff's Motion for Summary Judgment that "[t]he Plan was amended in 1998 to extend the 1994 PJS [Permanent Job Separation] benefit because of job movement or product-line relocation, or location closedown until the year 2000." Defendants' Opposition to Plaintiff's Motion for Summary Judgment, p. 6 n. 7. For purposes of deciding this motion, it is immaterial whether or not the Amendment totally eliminates the Special Retirement Pension after September 1, 1998.

cause: (1) "Plaintiff has expressly waived his right to maintain this [ERISA] action by entering into a binding Separation Agreement which includes a General Release and Promise not to Sue;" (2) application of the test established by the United States Court of Appeals for the Third Circuit in *Cirillo v. Arco Chem. Co.*, 862 F.2d 448 (3d Cir.1988) to the facts of this action shows that said waiver is valid as a matter of law; (3) the Agreement fully complies with the heightened waiver requirements of the Older Workers Benefit Protection Act ("OWBPA"); and (4) "Plaintiff is not helped by the language of paragraph seven of the Separation Agreement providing that the Agreement does not affect any 'vested right' Plaintiff had under the Westinghouse Pension Plan or that the Agreement does not release 'any other rights and claims, which, by law, cannot be waived.'" In support of this last argument, Defendants contend that "[f]irst, Plaintiff has no vested right to the benefits he seeks in his Complaint[,]" "[s]econd, as demonstrated by the authority cited above, courts have routinely allowed for the waiver of ERISA claims, [a]nd lastly, Plaintiff cannot escape the fact that he had prior knowledge of Defendants' actions and could have either instituted a challenge at an earlier date or foregone accepting the substantial monetary consideration for the release of claims contained in the Separation Agreement. Plaintiff's failure to pursue either course of action makes any claim under paragraph seven of the Separation Agreement one that this Court should reject." Defendants' Motion to Dismiss, ¶ 1; Defendants' Supporting Brief, pp. 3–8.

■ The difficulty with Defendants' waiver argument is that in order to consider this basis for Defendants' Rule 12(b)(6) motion, I must review the contents of a document that is not attached to the Plaintiff's Complaint, is not an undisputed document alleged or referenced in Plaintiff's Complaint and is not a public record. The law is well established that "on a motion to dismiss for failure to state a claim, the Court is limited in its consideration to the complaint, documents attached to the complaint, undisputed documents alleged or referenced in the complaint, and public records." *Ferrara v. Superintendent, New York State Police*, 26 F.Supp.2d 410, 412 (N.D.N.Y.1998), *citing*, 2 James Wm. Moore, Moore's Federal Practice, ¶ 12.34[2] at 12–66 (3d ed.1997). Accordingly, not being able to consider the contents of the Release in considering Defendants' Motion to Dismiss, I cannot grant Defendants' motion to dismiss on the basis that by signing the contractual release, Plaintiff is barred from bringing the instant ERISA action.

## B. *Exhaustion of Administrative Remedies.*

Defendants next argue that Plaintiff's Complaint against them should be dismissed because the law is well established that a plaintiff alleging a wrongful denial of benefits under a plan covered by ERISA must either first exhaust his or her administrative remedies under the Plan or establish that such exhaustion would have been futile. In the instant case, Defendants argue that Plaintiff's claims are ones of wrongful denial of benefits (including his breach of fiduciary duty claim), that he has not exhausted his administrative remedies and that he cannot establish that the pursuit of those remedies would be futile. Defendant's Supporting Brief, pp. 8–12, 16–17.

In response, Plaintiff first contends that he did not have a duty to exhaust the Plan's administrative remedies because: (1) his Complaint alleges a statutory violation, i.e. a violation of ERISA § 204(g), 29 U.S.C. § 1054(g), and not a violation of the terms of the Plan as it existed when he was laid off in 1997 and (2) claims of breach of fiduciary duty are not subject to the exhaustion rule. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Opposition Brief"), pp. 14–17. Alternatively, Plaintiff argues that he did not

have to exhaust administrative remedies prior to bringing this suit because such an action would have been "futile." *Id.* at p. 17–21.

■ After careful consideration of the submissions of the parties, the difficulty I have with the Defendants' arguments and the case law decisions they rely upon in support thereof is two-fold. First, contrary to Defendants' position, Plaintiff's ERISA § 204(g) and breach of fiduciary duty claims are not simply claims of wrongful denial of benefits. Rather, Plaintiff's claims are that the Defendants violated the ERISA statute, specifically § 204(g), when it amended the Plan by first narrowing and then eliminating entirely the "Special Retirement Provision" of the Plan (i.e. a statutory violation claim) and that CBS violated its fiduciary duties under ERISA of acting solely in the interest of plan participants and beneficiaries, administering the Plan in accordance with both the governing documents and instruments and ERISA, and exercising care, prudence and diligence in the performance of its responsibilities. Second, Defendants have not provided the Court with any case law that supports the proposition that when a plaintiff brings an ERISA § 204(g) statutory violation claim or a claim for breach of fiduciary duties such as is alleged by Plaintiff in the case *sub judice,* exhaustion of administrative remedies or proof of futility of such exhaustion is required prior to instituting a lawsuit. Moreover, there is case law to support Plaintiff's propositions that where an ERISA claim is premised upon a statutory violation such as Plaintiff is here alleging, a Plaintiff need not exhaust administrative remedies prior to bringing suit in federal court and that exhaustion of administrative remedies is not required for an ERISA breach of fiduciary duty claim. *See Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889,

891 (3d Cir.1986) (holding that where ERISA action is brought not to enforce the terms of a plan but to assert rights granted by the federal statute, exhaustion of administrative remedies is not required);[3] *Gould v. GTE North Inc.,* 40 F.Supp.2d 434, 440 (W.D.Mich.1999) (holding that where ERISA plaintiffs' challenge was directed at the validity of a plan amendment and not to the interpretation of that amendment, requiring exhaustion of administrative remedies would not further the well-established purposes of exhausting administrative remedies); *Thomas v. Kemper Nat. Ins. Companies,* 984 F.Supp. 885, 890 (E.D.Pa.1997) ("unless the claim alleges a statutory violation rather than a mere denial of benefits under an ERISA plan … exhaustion of remedies is a pre-requisite to maintaining an action for denial of benefits"); *In re Blue Cross of Western Pennsylvania Litigation,* 942 F.Supp. 1061, 1065 (W.D.Pa.1996), (J. Standish) ("a party claiming breach of a fiduciary duty under 29 U.S.C. § 1132(a)(2) or (a)(3) is not required to exhaust administrative remedies prior to bringing suit").

Accordingly, absent being provided legal authority by Defendants that supports dismissal of Plaintiff's § 204(g) and breach of fiduciary duty claims on the basis that with respect to said claims Plaintiff had to and did not exhaust his administrative remedies prior to instituting the instant lawsuit, Defendants' motion to dismiss Plaintiff's Complaint is denied.[4]

### C. *Breach of fiduciary duty claim.*

Count II of Plaintiff's Complaint purports to set forth a claim under ERISA for breach of fiduciary duty. Specifically, Plaintiff contends that in adopting and implementing the Amendment CBS violated its fiduciary duties of: (1) acting solely in

---

**3.** Indeed, Defendants even acknowledge in their Supporting Brief that *Zipf* stands for the proposition that exhaustion is not required when a plaintiff is claiming a statutory violation of ERISA. *See* Defendants' Supporting Brief, p. 10 n. 6.

**4.** Having so found, it is not necessary to address the parties' arguments concerning whether it would have been futile for Plaintiff to have filed an administrative claim prior to filing the instant litigation against Defendants.

the interest of plan participants and beneficiaries, 29 U.S.C. § 1104(a)(1)(A); (2) administering the Plan in accordance with both the governing documents and instruments and ERISA, 29 U.S.C. § 1104(a)(1)(D); and (3) exercising care, prudence and diligence in the performance of its responsibilities, 29 U.S.C. § 1104(a)(1)(B). CBS characterizes the claim as deficient in three respects. I need not dwell on the failure to exhaust administrative remedies challenge, for the reasons set forth, *supra.*

CBS also contends that the relief sought confirms that the breach of fiduciary duty claim is merely a disguised claim for benefits and, as such, is untenable. Finally, CBS denies that it is a Plan fiduciary. I will address each contention *seriatim.*

### 1. Propriety of relief sought.

ERISA provides, in relevant part, that:

[a] civil action may be brought -

. . .

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 [5] of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a). Thus, a beneficiary could pursue a breach of fiduciary duty claim under § 1132(a)(2), § 1132(a)(3)(A) or § 1132(a)(3)(B).

Here, the Complaint does not invoke any particular subsection. Nevertheless, the absence, in both the Complaint and Plaintiff's Opposition Brief, of a reference to "injunctive relief" suggests that Plaintiff is not proceeding under § 1132(a)(3)(A). Accordingly, I presume that Plaintiff is not proceeding under this section.

■ Furthermore, I agree with CBS that a claim under § 1132(a)(2) must be premised upon harm to the entire Plan, rather than harm to a particular individual. *See McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir.1986), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986) (stating that "damages for breach of fiduciary duty do not go to any individual plan participant or beneficiary, but inures to the benefit of the plan as a whole"); *Murphy v. Wal–Mart Associates' Group Health Plan,* 928 F.Supp. 700, 710 (E.D.Tex.1996) (stating that in a claim under § 1132(a)(2), "[a]ny recovery would go to the . . . plan"); *Simmons v. Southern Bell Tel. & Tel. Co.,* 940 F.2d 614 (11th Cir.1991) and *Donahey v. Childs Equipment Co., Inc.,* 812 F.Supp. 566, 567 (W.D.Pa.1992). Plaintiff does not challenge this contention. Moreover, both the Complaint and Plaintiff's Opposition Brief are devoid of any reference to recovery on behalf of the Plan. In fact, Plaintiff's request that the "Defendants . . . pay Special Retirement Pensions to Plaintiff and all other members of the Class who have satisfied or who hereafter satisfy the pre-Amendment conditions for the Special Retirement Pension," (Complaint, p. 8), reinforces the conclusion that Bellas is seeking individual relief. Accordingly, I am also presuming that Plaintiff's breach of fiduciary duties claim has not been brought under § 1132(a)(2).[6]

■ The restrictions associated with § 1132(a)(2) are not associated with § 1132(a)(3)(B). Thus, an individual may bring suit against a fiduciary on his own behalf, rather than on behalf of the Plan as a whole. *See Ream v. Frey,* 107 F.3d 147, 153 (3d Cir.1997). Given the nature of

---

5. Section 1109 details a fiduciary's liability for breach of his or her duties.

6. To the extent, Plaintiff should later argue that he is asserting a claim under § 1132(a)(2), I would grant a subsequent dispositive motion filed by Defendants with respect to said claim.

Plaintiff's claim, I presume that Bellas is proceeding under § 1132(a)(3)(B).

CBS contends that Bellas cannot seek relief under this section because § 1132(a)(3)(B) "does not come into play where the statute itself authorizes an explicit form of relief for the claimed injury." Defendants' Supporting Brief, p. 13. According to CBS, Bellas's claim is nothing more than a disguised claim for benefits. As such, it insists, the claim should be brought under § 1132(a)(1)(B).[7]

■ While I do not disagree with CBS's interpretation of the various sections of the statute, I do disagree with its application of the statute to the breach of fiduciary duties claim at bar. Plaintiff does not complain simply of a denial of benefits. Rather, he contends that CBS's conduct in adopting and implementing the Amendment and in failing to inform Class members of their eligibility for Special Retirement Pensions under the pre-Amendment terms of the Plan violated its fiduciary duties to discharge its duties solely in the interest of the participants and beneficiaries of the Plan, to exercise care, prudence and diligence in the performance of its responsibilities, and to administer the Plan in accordance with the documents and instruments governing the Plan and in accordance with ERISA. Complaint, ¶¶ 37–40. Consequently, I find the cases relied upon by CBS, which involved contentions that the denial of a particular claim for benefits constituted a fiduciary breach, *see Wald v. Southwestern Bell Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir.1996) and *Kuestner v. Health and Welfare Fund,* 972 F.Supp. 905, 911 (E.D.Pa.1997), to be distinguishable. Simply stated, § 1132(a)(1)(B) does not provide redress for fiduciary violations. Certainly CBS has not identified any case law which suggests that it does.

Because I find that Bellas's breach of fiduciary duty claim is not merely a disguised claim for benefits, and because I find that no other section provides adequate relief for the alleged injury, Plaintiff's breach of fiduciary duties claim against CBS will go forward. CBS's Motion is denied in this regard.

### 2. Plan Fiduciary.

■ Count II charges that CBS is a fiduciary of the Plan. CBS contends that Plaintiff's factual allegations are deficient and that, at any rate, the Plan documents firmly establish that it is not a fiduciary. As to the sufficiency of the pleadings, I agree that the allegations set forth in the Complaint are somewhat wanting. Nevertheless, the Complaint clearly incorporates the Plan documents and includes attachments of the same. The Plan itself specifies that CBS is both the "plan sponsor" and the "named fiduciary." Although CBS delegates some responsibility to others, it retains responsibility for amending the Plan. *See* Complaint, Exhibit A, p. 45. Count II states, in part, that CBS breached its fiduciary duties by amending the Plan. Viewed in this context, I find the allegations of Plaintiff's Complaint to be sufficient.[8]

Additionally, I find CBS's contention that it is not a fiduciary to be unpersuasive. As stated above, the Plan designates CBS the fiduciary for amendments to the Plan. Part of the claim here is that the Plan was wrongfully amended. Therefore, it appears that Bellas has appropriately named CBS as a fiduciary.

---

7. Section 1132(a)(1)(B) permits a participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

8. The case proffered by CBS, *Custer v. Sweeney,* 89 F.3d 1156 (4th Cir.1996), is distinguishable given that the alleged fiduciary, the Plan attorney, was not specifically identified in the plan documents as a fiduciary. As such, it is logical that the *Custer* court would have required the plaintiff to provide more factual support for his assertion that the attorney was a fiduciary.

Accordingly, Defendants' Motion to Dismiss Plaintiff's breach of fiduciary duties claim against Defendant CBS is denied.